Jones, Chief Judge,
delivered the opinion of the court:
This suit arises under section 3250 (1) of the 1939 Internal Revenue Code which provides a drawback of $6.00 per proof gallon on fully tax-paid alcohol used in the manufacture or production of flavors or flavoring extracts which are unfit for beverage purposes. Plaintiff contends it is entitled to drawbacks for the periods January 1, 1951, to March 31, 1951, and April 1, 1951, to June 30, 1951, in the amounts of $8,443.65 and $12,717.60, respectively, plus interest.
Plaintiff filed timely claims[1] for drawbacks for both such periods with the Commissioner of Internal Revenue in 1951 but both claims were denied on November 13, 1951, by the Commissioner on the ground that plaintiff had used iso-propyl alcohol, also referred to as isopropanol, without the Commissioner’s sanction. Isopropanol is a tax-free synthetically produced alcohol, not suitable for beverage purposes. Its use in non-beverage products will not be approved by the Commissioner because of its conduciveness to fraud. It is difficult to detect the presence of isopropanol by laboratory analysis of a sample containing it when used as a mixture with ethyl alcohol, a taxable alcohol. The Commissioner fears that if its use were sanctioned for non-beverage purposes a manufacturer could claim that taxable alcohol was included in the product in larger quantities than was actually used, since the difference in alcoholic content which would show up in the laboratory analysis would be taken up by the tax-free isopropanol. The taxable alcohol could then be diverted to other purposes.
*655 Section 3250 (1) provides, among other things, that for a manufacturer to claim a drawback it must comply with regulations promulgated by the Commissioner in accordance with the authority granted by that section. Those regulations specify that a manufacturer intending to claim drawbacks must first submit to the Commissioner quantitative formulae of the products for which drawbacks are to be claimed. Treas. Eegs. 29-197.23 (d). Such formulae must contain a description of the products and the amount of each ingredient used therein. Plaintiff, previous to the periods here in question, submitted the required quantitative for-mulae for the products on which it intended to claim drawbacks but did not indicate in any of them that isopropanol was to be used.
Subsequent investigation by the Bureau of Internal Revenue, however, brought out that plaintiff used isopropanol in products for which it was claiming drawbacks for the two quarterly periods immediately preceding the ones here in question. The Commissioner thereupon ordered its use discontinued but allowed plaintiff drawbacks for those periods anyway, feeling the use of the isopropanol was due to an innocent mistake on plaintiff’s part. The Commissioner, however, directed that plaintiff resubmit formulae for its drawback products and plaintiff did so. The new formulae of course did not indicate that isoproponal was to be used.
In July of 1951 the Commissioner of Internal Revenue determined that plaintiff was still using isopropanol and in fact was subsequently told by plaintiff that “it was none of our [the Government’s] damn business.” Because of the continued use of this forbidden alcohol the Commissioner refused plaintiff drawbacks for the periods in question. Suit was thereafter brought in this court.
It should be pointed out, however, that of the $8,443.65 claimed as drawbacks for the period January 1, 1951, to March 31, 1951, $388.14 represents claim for drawbacks for products in which no isopropanol was used; and of the $12,717.60 in claimed drawbacks for the period April 1,1951, to June 30,1951, $5,317.80 represents claimed drawbacks for products in which no isopropanol was used.
*656 The question we must resolve, therefore, is whether plaintiff is entitled to all or part of the claimed drawbacks for the specified periods notwithstanding the fact that isopropanol was used in some of the products for which the drawbacks are claimed.
For a manufacturer to be entitled to drawbacks of this type it is imperative that there be compliance with the statute and regulations promulgated thereunder. The basic requirement of the combined statute and regulations is that before a drawback may be granted claimant must have filed with the Commissioner for approval a quantitative formula for each of the products for which it intends to claim drawbacks.
The products in which plaintiff in this case used isopro-panol do not meet this requirement and, therefore, plaintiff is not entitled to drawbacks for such products. A quantitative formula by its very nature must specify all the ingredients of the product and the amount of each ingredient contained therein. If one other ingredient is added, the quantitative formula submitted is not representative of the manufactured product. In some of plaintiff’s products, in addition to the ingredients specified in the formulae, isopro-panol was added. Thus, these products did not comply with the formulae approved by the Commissioner and, hence, do not qualify for drawback relief.
Plaintiff argues that notwithstanding the fact that it used isopropanol it is entitled to drawbacks. Plaintiff contends initially that the isopropanol it used was not added until after the manufacturing process was complete and before shipping. Such an argument is specious. It was the makeup of the end product and what went into that product that was of interest to the Commissioner. We feel that every ingredient that goes into the makeup of that end product is part of the manufacturing process. If plaintiff desired the end product to contain isopropanol, as far as the Commissioner is concerned, the manufacturing process as to that product is not complete until it is included. Therefore, the isopropanol used by plaintiff in this case was not added after the manufacturing process was complete, it was added as part of the manufacturing process.
*657 Second, plaintiff asserts that it is unable to find any regulation or rule of the Commissioner that expressly prohibits the addition of tax-free isopropanol at any time after the manufacture of a flavoring extract. In connection with what we said above, the isopropanol was not added after but d/wring the manufacturing process and in order for the product to qualify for drawbacks it must be manufactured according to the formula approved by the Commissioner. There is no regulation specifically prohibiting the use of tax-free isopropanol because, instead of compiling a long list of forbidden ingredients, the Commissioner devised a much simpler method to regulate drawback payments, that of requiring the submission of a quantitative formula. If that formula contained forbidden ingredients the Commissioner would disapprove it and indicate why. The plaintiff then, if it still desired drawback relief as to that product, could make the necessary changes and thus qualify for the relief. This procedure eliminates the necessity of a regulation specifically prohibiting isopropanol.
Third, plaintiff asserts that section 3250 (1) of the 1939 Code deals with products which are unfit for beverage purposes and according to that section all the manufacturer is required to prove to be eligible for drawbacks is that fully tax-paid alcohol was used for the production of flavoring extracts which, were unfit for beverage purposes. Plaintiff also points to section 197.24 (c) (4) of Treasury Eegulations 29, which follows, to prove that if the end product is unfit for beverage purposes it should be entitled to drawbacks:
Upon receipt by the Deputy Commissioner, the formulas will be examined and if found to be medicines, medicinal preparations, food products, flavors or flavoring extracts which are unfit for beverage purposes, thev will be approved.
This contention is also without merit. It is true that for the product to be eligible it must be unfit for beverage purposes, but that is not the only requirement of the regulations. As noted above, manufacture of the product in compliance with an approved quantitative formula is imperative. Plaintiff did not so manufacture. Among other things, the regulations also provide that data submitted in support of the *658 claim for drawbacks must be correct. Treas. Beg. 29-197.23 (e). Such data in plaintiff’s case were incorrect, since the claimed entitlement to the drawbacks was placed on formulae that did not accurately reflect the makeup of the product for which the drawbacks were claimed. Plaintiff’s actions throughout the period in question indicate without doubt an attempt by it to prevent the Government from learning that isopropanol was being used.
We do not feel, however, as defendant contends, that because the plaintiff did not meet the requirements of the statute and regulation on some of its products that it has forfeited its right to drawbacks on the products that did meet the requirements. The plaintiff is, therefore, entitled to judgment to the extent that the claimed drawbacks are for products that meet the requirements of the Commissioner’s regulations. It is undisputed that this will amount to $388.14 for the period January 1,1951, to March 31,1951, and $5,317.80 for the period April 1, 1951, to June 30,1951.
Judgment will be entered to that effect, without interest.
It is so ordered.
Madden, Judge; Whitaker, Judge; and Littleton, Judge, concur.

 Plaintiff’s claims to the Commissioner oí Internal Revenue and its petition in this court sought the recovery of $10,136.40 as a drawback for the period January 1, 1951, to March 31, 1951, and $14,127 as a drawback for the period April 1, 1951, to June -30, 1951. At the trial of the case, however, plaintiff withdrew claims in the aggregate amount of $3,102.15 of which $1,692.75 was withdrawn from the amount claimed for the earlier period and $1,409.40 was withdrawn from the amount claimed for the latter period.